IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, for the Use of ELEVATOR TECHNOLOGY, a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>FLAGG BUILDING IMPROVEMENTS, et al.,<br><br>          Defendants.            / | No. 2:06-cv-1443-RRB-GGH<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AT DOCKET 17** |

**I.   Introduction**

Before the Court are Defendants Flagg Building Improvements ("FBI") and Travelers Casualty and Surety Company of America ("TCSCA") (together "Defendants") with a Motion for Summary Judgment at Docket 17.  Plaintiff Elevator Technology ("Plaintiff" or "ET") opposes at Docket 36.

Based on adequacy of the parties' briefing, the Court concluded that oral argument was not necessary and ordered the motion submitted on the briefs.  For the reasons discussed below, Defendants' motion is denied.

1

**II.  Background**

Except as otherwise noted, the Court finds the following facts to be undisputed.[1]  On or around August 30, 2004, FBI received a written bid from ET regarding the elevator portion of the American River Watershed Project and Folsom Dam modifications ("Project") in Folsom, California, for the sum of $247,850.00.  On or about September 14, 2004, Defendants FBI, K.O.O. Construction, Inc. ("KOO"), and TCSCA, acting as a joint venture ("Joint Venture") were awarded a contract ("Prime Contract") by the United States of America, through the United States Army Corp of Engineers ("ACOE") to perform construction work on the Project.  On or about September 21, 2004, Defendant TCSCA, as surety, executed a performance bond for FBI and KOO as principle.

On or about March 14, 2005, ET executed a written subcontract ("Subcontract") with the Joint Venture.  It appears, however, that FBI and KOO did not provide executed copies of the subcontract to ET until May and June, respectively, of 2005.[2]  Under the Subcontract, ET agreed to provide labor and materials necessary to install new elevator controls and related

---

[1] The facts and assertions contained herein are taken from Defendants' Statement of Material Undisputed Facts at Docket 24 and Plaintiff's Response thereto at Docket 37.

[2] Docket 37 at 1-2, ¶ 4.

equipment, including installation of controls, elevator control panels, door equipment, car and hall push-button fixtures, cables, wiring, and testing of the elevator located at the Project. ET agreed to perform all of the work on the contract for the sum of $247,850.00, the amount of its bid.

The Subcontract also contained a "time is of the essence" clause, a liquidated damages provision for failure to complete the Project on time, and a 12-month period of warranty/maintenance work. Additionally, the joint venture was entitled to withhold payment in the event that ET failed to perform. The terms and conditions of the Prime Contract required ET's scope of work be completed by August 31, 2005, and any site cleanup be completed by September 30, 2005, however these dates are not specified in the Subcontract. Indeed, ET alleges that the this schedule was only provided to ET on August 15, 2005, more than three months after it received a copy of the executed Subcontract and two weeks prior to the required completion date. The parties ultimately dispute whether ET in fact completed its scope of work by August 31, 2005.

The Subcontract provided that ET was not entitled to additional compensation for delays or for accelerating its work to meet the schedule, but also contained a provision (Section 5) for extensions of time caused by the actions or delays of others. ET requested extensions of time due to alleged delays

caused by Defendants but these requests were denied. ET alleges, however, (and Defendants dispute) whether ET is entitled to an additional $34,350.00 in overtime wages pursuant to an oral agreement between FBI owner David Flagg and ET Vice President Leonard Bates at a meeting on August 18, 2005, for the purpose of ensuring the Project would be ready for inspection by August 31.

Subsequent events involve substantial disputes between the parties. On or about May 8, 2006, a dispute arose over whether ET's installation of the new rope gripper was defective (as alleged by Defendants) or installed per specifications, tested, and permitted for use (according to ET). According to Defendants, ACOE demanded reinstallation of the rope gripper based on the report of third party draftsman Mr. R. Blaska. ET disputed Mr. Blaska's findings and qualifications and asserted that the requested repair and replacement went beyond what was called for in the Project's plans and specifications. However, in a good faith expectation that it would be paid outstanding sums owed, ET agreed to modify the installation by adjusting the bolt distance relating to the rope gripper and, at ACOE's request, installing an additional brace. ET alleges that after subsequent discussions and correspondence, ACOE requested subsequent engineering to be performed, but did not require re-installation of the rope gripper. On January 16, 2007, FBI

issued a Final Notice to Perform to ET. According to Defendants, ET's work was not finally completed until April 19 and approved on April 20, 2007.

On April 25, 2007, and June 14, 2007, Defendants offered to pay ET for the balance of its work, but received no response from ET. ET disputes whether the offer constituted complete payment for sums owed.

Plaintiff filed a Complaint on or about June 28, 2006, seeking damages for an alleged breach of contract by FBI and KOO, and named TCSCA as surety.[3] Plaintiff's Complaint alleges the following causes of action: Complaint on Bond (Miller Act); Complaint for Breach of Contract; Common Counter for Money Owed; Unjust Enrichment; and Quantum Meruit.[4]

On January 22, 2008, Defendants filed the present motion for summary judgment.

**III. Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to

---

[3] Docket 14 at 2.

[4] Docket 1.

material fact.[1]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[2]

Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[3]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[4]  However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[5]

---

[1]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[2]   Id. at 323-325.

[3]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[4]   Id. at 255.

[5]   Id. at 248-49.

**IV.  Discussion**

    **A.   Timeliness Defendants' Motion**

As a threshold matter, ET argues that Defendants' Motion is untimely and violates the Court's April 4, 2007, Status Order, and therefore should be denied.[5]  The Court declared in its April 4, 2007, Status Order that: "All dispositive motions shall be filed by January 23, 2008.  Hearing on such motions shall be on February 20, 2008, 10:00 a.m.  The time deadline for dispositive motions does not apply to motions for continuances, temporary restraining orders or other emergency applications."[6]

Defendants electronically filed their Motion on January 22, 2008, and set the hearing for February 20, 2008. Defendants' Statement of Material Undisputed Facts, however, was inadvertently omitted from Defendants' filing.[7]  On January 31, 2008, this Court issued a minute order indicating that the motion would not be calendared for February 20, 2008, but that the motion could be re-noticed for the March 5, 2008.  The Court accepts Defendants' Motion as timely because Defendants re-noticed its Motion in compliance with the Court's instructions.

---

    [5]    Docket 36 at 8.

    [6]    Docket 10.

    [7]    Docket 25 at 1-2; Docket 40 at 8-9.

B.  **Complaint on Bond/Miller Act**

ET's First Cause of Action seeks recovery under the Miller Act, 40 U.S.C. § 3133 of an unpaid balance of $79,129.33 for materials, labor, tools, and equipment which it furnished in support of the Project.[8]  The Miller Act provides in relevant part:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.[9]

As a matter of law, the Miller Act does not expand a surety's liability beyond the obligations of the principle's contract with the claimant.[10]  Consequently, performance by the subcontractor is a prerequisite to recovery under the Miller

---

[8]  Docket 1 at 3-4.

[9]  40 U.S.C. § 3133(b)(1).

[10]  See U.S. for Use of F.E. Robinson Co. of N.C., Inc. v. Alpha-Cont'l, 273 F. Supp. 758 (E.D.N.C. 1967).

Act.[11]  ET has the burden of proving that it fully performed all of its obligations under the Subcontract.[12]

Defendants move for summary judgment and argue that ET has not met the requirements of the Miller Act because: (1) ET's performance was not accepted as complete before the filing of the complaint; (2) FBI was entitled to withhold payments to ET based on ET's failure to perform; (3) FBI offered to pay ET within 90 days of the date it finally completed its scope of work on the Project; and (4) ET is not entitled to the amount claimed in its complaint.[13]

Based on a thorough review of the briefings and accompanying evidence, and as further discussed below, the Court concludes that Plaintiff has produced sufficient evidence demonstrating genuine issues of material fact for trial which preclude a grant of summary judgment in favor of Defendants.

**(1) ET's Performance**

With respect to the timing of acceptance of ET's performance, the Court finds that multiple genuine issues of material fact exist, including whether the elevator rope gripper

---

[11] 40 U.S.C. § 3133(b)(1); McDaniel v. Ashton-Mardian Co., 357 F.2d 511 (9th Cir. 1966).

[12] See U.S., to Use and for Benefit of Foster Wheeler Corp. v. Am. Sur. Co. of N.Y., 142 F.2d 726 (2nd Cir. 1994).

[13] Docket 18 at 5-10.

9

was correctly installed, whether Mr. Blaska was qualified to test, determine, and report that the rope gripper was defective after Qualified Elevator inspectors Paul Pitfield and Mike Corlew, who where retained by the Project Owner, previously demonstrated that all systems functioned properly. Thus, the Court cannot conclude that Plaintiff's work was not accepted as complete until April 20, 2007.

**(2) Withholding of Payment**

Defendants argue that the alleged failure of ET to timely perform its obligations relating to providing information and documentation to FBI and installation of the rope gripper constituted material breaches by ET and entitled Defendants to withhold payments under Section 15.1 of the Subcontract. As discussed above, however, Defendants' allegations relating to the rope gripper dispute are subject to material factual disputes between the parties.

The Court further notes Defendants' argument that even if ET had completed its initial scope of work by the Subcontract's August 31, 2005, deadline, ET would not have been entitled to final payment until sometime after September 30, 2006, after satisfactory completion of its 12-month

warranty/maintenance obligations.[14]  However, Defendants have not identified any provision of the Subcontract to support the claim that final payment would only come due after the 12-month warranty/maintenance period.  Plaintiff, conversely, points to Section 4 of the Subcontract which provides that final payment is due 10 days after the entire work required by Plaintiff.[15] Moreover, Defendants appear to have taken inconsistent positions, on the one hand asserting that Plaintiff was required to complete its work obligations by August 31, 2005, and on the other hand that it was legally impossible under the terms of the Subcontract for the Plaintiff to complete its work obligation prior to September 2006.  Therefore, the Court cannot conclude as a matter of law that that FBI was entitled to withhold payment from ET prior to the filing of this lawsuit.

However, the Court finds some merit in Defendants' argument that FBI was entitled to withhold payment <u>after</u> the filing of ET's Complaint.  Section 15.1.4 of the Subcontract states:  "Contractor may withhold [or nullify] the whole or part of any payment to the extent necessary to protect Contractor from loss, including costs and attorney's fees, on account of . . . (2) claims filed or reasonable evidence indicating probable

---

[14]   Docket 17 at 6-7.

[15]   Docket 36 at 11-12.

filing of claim."[16] Because this contract provision is unambiguous, the Court does not need to refer to industry custom and practice as argued by Plaintiff.[17] This provision does not conflict with other provisions of the Subcontract cited by ET which afford the parties the right to seek legal redress of grievances, namely Sections 18 and 25, which set forth claim resolution procedures and provision for attorneys' fees, respectively.[18]

Nevertheless, entitlement to withhold payment post filing of the Complaint does not by itself defeat Plaintiff's claim under the Miller Act. Triable issues of fact exist with respect to whether payment was properly withheld <u>prior</u> and at the time of the filing of the Complaint. Although Defendants were entitled to withhold payment once after the Complaint was filed, Defendants cannot rely on Section 15.1.4 to defeat Plaintiff's Miller Act claim at the summary judgment stage.

### (3) Offer to Pay

Defendants assert that they are entitled to summary judgment on Plaintiff's Miller Act claim because they twice

---

[16] Docket 20-2 at 1.

[17] Docket 36 at 12-13.

[18] Docket 20-2 at 10-11.

offered to make full payment to Plaintiff on April 25, 2007, and June 14, 2007, within 90 days of April 19, 2007, the date which Defendants assert that Plaintiff's work was finally accepted as complete. However, as discussed above, there are genuine issues of material fact regarding whether and when Plaintiff completed its scope of work and when Plaintiff's work was initially accepted as complete. Moreover, the parties dispute whether Defendants' offer included the full amount owed to Plaintiff.

### (4) Amount Claimed

ET seeks compensation based on the "reasonable value" of its services rendered to include $34,350.00 in overtime wages allegedly agreed to by FBI. ET alleges that FBI owner David Flagg and ET Vice President Leonard Bates orally agreed to additional overtime compensation in order to ensure inspection of ET's work on August 31, 2005. Thus, ET's claim for amounts in excess of the Subcontract arise from the alleged oral agreement for additional compensation meeting between Mr. Flagg and Mr. Bates at the August 18, 2005, and not from delays as prohibited by Section 5 of the Subcontract.

Defendants, however, argue that this amount far exceeds the remaining balance of its agreed contract price. Defendants point to Section 5 of the Subcontract which provides that "No claims for additional compensation or damages for delays shall be recoverable from Contractor." Defendants also

rely on Section 6 which precludes additional compensation for extra work performed unless there is a written change order and declares that proceeding with extra work without a change order constitutes an agreement by the subcontractor not to be compensated by the change. It is undisputed that no written change order was issued here for work characterized by ET as beyond the scope of the contract.

Neither California law, nor the Miller Act, requires a written change order in construction contracts in order for the parties' oral agreements to be enforceable.[19] In light of factual issues regarding the scope of ET's work and whether ET completed that work on time, the Court finds that a reasonable jury could conclude that Mr. Flagg and Mr. Bates orally modified ET's compensation to allow ET overtime wages to meet a deadline of which it had only recently been informed.[20]

In conclusion, the Court finds that genuine issues of material fact exist with respect to each prong of Plaintiff's claim under the Miller Act. Defendants' Motion for Summary Judgment is therefore denied on as to the cause of action.

---

[19] See Cont'l Cas. Co. v. Schafer, 173 F.2d 5 (9th Cir. 1949); Weeshoff Const. Co. v. Los Angeles County Flood Control Dist., 88 Cal. App.3d 579, 589 (1979); Frank T. Hickey, Inc. v. Los Angeles Jewish Cmt'y Council, 128 Cal. App.2d 676, 681-83 (1954).

[20] See, e.g., Docket 37 at 4, ¶ 15.

C. **Breach of Contract**

ET's second cause of action alleges that Defendants breached the Subcontract by failing to pay amounts owed for labor performed.

To succeed on a cause of action for breach of contract, ET must prove by a preponderance of the evidence: (1) the existence of a contract; (2) ET's performance of the contract, or excuse for nonperformance, (3) FBI's breach; and (4) the resulting damage.[21] Defendants concede the existence of a written contract, but move for summary judgment on the grounds ET cannot demonstrate the existence of the remaining three elements of a breach of contract claim.

As discussed above, the Court finds that genuine issues of material fact abound with respect to whether ET timely completed its contract obligations. Reciprocally, because disputes of material facts exist with respect to whether Plaintiff completely performed, factual issues also exist with respect to whether FBI breached the subcontract by withholding payment. Finally, while the subcontract provides for liquidated damages in the event of Plaintiff's failure to timely complete

---

[21] See Otworth v. S. Pac. Transp. Co., 166 Cal. App.3d 452, 458 (1985) (citing Wise v. S. Pac. Co., 223 Cal. App.2d 50, 59 (1963)).

its work, the multiple factual disputes discussed above preclude a determination as a matter of law that Defendants are entitled to liquidated damages here.

The Court notes that in addition to the liquidated damages provision for untimely performance, the Subcontract also provides that the subcontractor may have additional time to complete the project as a result of delays that were not within its own control or own fault.[22] The source and cause of any delays are triable issues of fact which Plaintiff has produced sufficient evidence and is therefore entitled to prove at trial.

**D.   Common Count, Unjust Enrichment, Quantum Meruit**

ET's Third, Fourth, and Fifth causes of action assert that Defendants have failed to pay amounts due and owing for labor, services, equipment and materials furnished by ET to Defendants is $79,129.33, plus costs, interest, and other sums to be proven at trial under theories of common count, unjust enrichment, and quantum meruit.[23] Defendants argue that FBI is entitled to summary judgment on these causes of action because ET did not fully perform its obligations under the Subcontract before filing the Complaint.[24]

---

[22]   Docket 20-1 at 3.

[23]   Docket 1 at 5-7.

[24]   Docket 18 at 13-14.

These claims all stem from a common principle of equity. "The common counts are in theory based on express or implied promises to pay money. The obligation to pay is rested upon the equitable principle of preventing unjust enrichment as applied to the particular circumstances which have arisen between the parties."[25] Similarly, quantum meruit is a theory of restitution that allows recovery for the value of services rendered.[26]

As discussed above, the parties dispute whether ET fully and timely performed its obligations. There also appears to be a dispute as to whether an express contract exists, the nature of the agreement, and the amount owing under any such agreement between the parties in relation to the recouping of an additional $34,350.00 in overtime wages for work performed between August 18, 2005 and August 31, 2005.

Thus, genuine issues of material fact exist with respect to the value of the services rendered by ET and when FBI's obligation to pay for these services became due. Defendants' Motion for Summary Judgment with respect to ET's Third, Fourth, and Fifth causes of action is therefore denied.

---

[25]    Moya v. Northrup, 10 Cal. App.3d 276, 281 (1970).

[26]    Maglica v. Maglica, 66 Cal. App.4th 442, 449 (1998).

**V.   Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment (Docket 17) is **DENIED**.  The matter shall proceed in due course.

IT IS SO ORDERED.

ENTERED this 2nd day of April, 2008.

                                 s/RALPH R. BEISTLINE
                                 UNITED STATES DISTRICT JUDGE