UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, for the Use of ELEVATOR TECHNOLOGY, a California Corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>FLAGG BUILDING IMPROVEMENTS, a California corporation; KOO CONSTRUCTION, a California corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation; and DOES 1 through 25, inclusive,<br><br>　　　　　　Defendants. | Case No.S:06-CV-01443 JAM-GGH<br><br>**PRETRIAL CONFERENCE ORDER** |

Pursuant to court order, a Pretrial Conference was held on April 29, 2009 before Judge John Mendez. Thomas G. Trost appeared as counsel for plaintiffs; Matthew D. Pearson appeared as counsel for defendants Flagg Building Improvements and Travelers Casualty and Surety Company of America; Annie S. Amaral appeared as counsel for defendant KOO Construction. After hearing, the court makes the following findings and orders:

## I. JURISDICTION/VENUE

Jurisdiction is predicated upon 40 U.S.C. § 3133 and 29 U.S.C. § 1391(b), and has previously been found to be proper by order of this court, as has venue. Those orders are confirmed.

## II. JURY/NON-JURY

Both parties have demanded a jury trial.

## III. STATEMENT TO BE READ TO JURY

Seven days prior to trial the parties shall submit a joint statement of the case that may be read to the jury at the beginning of jury selection.

## IV. UNDISPUTED FACTS

On September 14, 2004, Defendants Flagg Building Improvements ("FBI") and K.O.O. Construction ("KOO") (hereinafter collectively "JV") were awarded a contract by the United States of America, through the United States Army Corps of Engineers for a work improvement project consisting of an emergency generator building and elevator upgrade for the American River Watershed Project and Folsom Dam modifications in Folsom, California ("Project"). On September 21, 2004, Defendants JV, as principal, and the Defendant Travelers Casualty and Surety Company of America, as surety, executed a Performance Bond for $3,659,189.00 guaranteeing the payment to all persons supplying labor and materials in the prosecution of the work provided for the Project.

On March 14, 2005, Leonard Bates, on behalf of Elevator Technology ("ET") executed a subcontract with JV for the performance of a part of the work described in the general contract between Defendants Flagg Building Improvements and K.O.O. Construction and the United States of America ("Subcontract"). The

Subcontract specified that ET would furnish all labor, materials, tools, equipment and supplies necessary to install new MCE, SCR elevator controls and related equipment, included installation of controls, elevator control panels, door equipment, car and hall pushbutton fixtures, cables, wiring, and testing of the elevator located at the Project. Originally, per their agreement, ET was to be paid the sum of $247,850.00 for the work to be provided on the Project.

On March 14, 2005, a signed copy of the Subcontract was provided by ET to FBI for review and signature.

On August 18, 2005, a weekly Project performance meeting was held at the Project site, where FBI, KOO, Army Corps of Engineers (ACOE) and ET employees were present. During this meeting, FBI expressed concern as to whether the elevator portion of the Project would be completed by August 31, 2005. ET's vice president, Leonard Bates, indicated to Mr. Flagg that it would not be possible to complete the elevator portion of the Project prior to August 31, 2005 due to alleged significant delays unless ET's employees put in overtime on the Project. Mr. Flagg requested that ET's employees put in the overtime to make the Project happen, at which point, Mr. Bates informed Mr. Flagg that his employees would need to be compensated for the additional overtime.

Following the August 18, 2005 meeting, ET and its employees put in overtime from August 18th through the 31st (including working late into the night on several occasions) to ensure the elevator was ready for testing on or before August 31, 2005. As a result of this additional work and overtime, the Project was inspected by Mike Corlew, an ACOE consultant from Paul Pitfield & Associates on

August 31, 2005.  During this inspection, Mr. Corlew tested the elevator rope gripper approximately 30 times and found it to be satisfactory.

Upon the completion of the initial inspection, ET completed the list of punchlist items and communicated to Mr. Corlew that the Project was ready for final inspection and permit issuance as all remaining items had been addressed.  Due to the impending Labor Day holiday, however, Mr. Corlew indicated he would not be able to get back out to the site for final inspection until September 6, 2005.

On September 6, 2005, Mr. Corlew returned and performed the final inspection and accepted and signed off on the completed work by ET, finding the work to be within Project specifications and compliant with all applicable codes.

On September 6, 2005, Mr. Corlew returned and performed an inspection and accepted and signed off on the work by ET.  Mr. Corlew did not issue a final permit for the Project at that time.

Also on September 6, 2005, ET informed FBI that Mr. Corlew had signed off on the work by ET.  It is undisputed that, based on these representations, FBI informed ET that it anticipated that ET would receive its final payment on approximately October 20, 2005, provided that ET submitted all required documentation.

On September 22, 2005, FBI issued to ET a 48 hour notice to complete its work, demanding the ET complete some very minor items and issue a credit for the governor and governor cable that was not replaced.

On September 22, 2005, ET informed KOO that it would not replace the governor or governor cable.

On August 15, 2006, after several months of investigating the

rope gripper problems, the ACOE requested that the joint venture correct the installation of the rope gripper "through a redesign of the Rope Gripper mounting that will meet the manufacturer's criteria."

On August 25, 2006, ET's counsel represented that ET would perform the correction.

On August 30, 2006, in response to an inquiry by ET, the Rope Gripper manufacturer, Hollister-Whitney Elevator Corporation, agreed with ET's interpretation of installation requirements for the rope gripper.

On January 16, 2007, FBI issued a Final Notice to Perform to ET in response to its failure to correct the Rope Gripper installation.

In February 2007, ET submitted a proposed modification, designed by an engineer hired by ET, of the rope gripper installation for the ACOE's approval, which submittal was approved.

ET completed its work on the Rope Gripper on April 19, 2007.

### V. DISPUTED FACTUAL ISSUES

A. Plaintiffs

The following material factual issues are in dispute: (1) when Flagg Building Improvements and KOO Enterprises executed and provided a signed copy of the subcontract to ET; (2) when the Joint Venture provided the Project Job Specification to ET; (3) whether ET completed its obligations by August 31, 2005, and if not, whether ET was excused from timely performing its obligations; (4) whether ET's installation of the rope gripper was installed per project specifications and permitted for use; (5) whether FBI was entitled to withhold payments to ET; and (6) whether FBI offered to

pay ET all moneys owed within 90 days of completion of the project.

The parties dispute the exact date at which time FBI and KOO returned the executed contract to ET; ET contends the contract was not provided until June 18, 2005. Due to numerous project delays (for which the parties dispute the cause of said delays) and the failure to timely provide a copy of the job specifications to ET, ET commenced work on the project on July 7, 2005. Since beginning work on the project, ET had communicated to FBI the need for JV to request an extension from the ACOE due to the significant delays ET was experiencing not through the fault of its own.

ET's vice president, Leonard Bates, indicated to Mr. Flagg that it would not be possible to complete the elevator portion of the Project prior to August 31, 2005 due to alleged significant delays unless ET's employees put in overtime on the Project. Mr. Flagg requested that ET's employees put in the overtime to make the Project happen, at which point, Mr. Bates informed Mr. Flagg that his employees would need to be compensated for the additional overtime. Mr. Flagg affirmatively stated that he would pay the additional overtime of the ET employees for the purpose of expediting completion of the Project, which was agreed to by Mr. Bates.

Defendant FBI disputes whether upon the completion of the initial inspection, ET completed the list of punchlist items.

On September 6, 2005, Mr. Corlew performed the final inspection and accepted and signed off on the completed work by ET, finding the work to be within Project specifications and compliant with all applicable codes. Later that day, Flagg acknowledged that ET's obligations under the Subcontract had been completed based

upon the fact that ET was entitled to final payment for outstanding moneys owed that FBI would be paying to ET on or about October 20, 2005.

B. Defendants

1. Whether there was sufficient time for ET to submit and have all its submittals approved in time to order and receive required materials to complete the work;

2. Whether ET's initial submittals for the Project were defective, requiring re-submittal, such that any purported delay in the approval of ET's submittals was caused by ET's own negligence, not by an other person or party;

3. Whether FBI provided complete plans and specifications for the Project to ET;

4. Whether ET was delayed by its own failure to perform the work in a timely manner, where ET agreed to start work on June 27, 2005, but did not begin work until July 7, 2005, where ET employees would regularly arrive at the project site late and/or leave early and where ET would sometimes send no employees to the project, especially on Fridays;

5. Whether ET waited until August 5, 2005, to voice any complaint about the August 31, 2005 deadline;

6. Whether FBI agreed to pay for overtime for ET to meet the August 31, 2005 deadline;

7. Whether ET was entitled to overtime compensation without a written modification, where the Subcontract proscribed additional pay for accelerating the work to meet the deadline without a written modification and where there is no written modification;

8. Whether the work performed by ET was required under ET's

1 <u>original</u> scope of work and, therefore, did not constitute "extra
2 work;"
3     9. Whether ET's failure to meet the Project specifications,
4 and the ACOE's refusal to accept ET's work as complete, constitutes
5 a breach of contract sufficient to preclude any recovery by ET;
6     10. Whether ET's failure to meet the Project specifications,
7 and the ACOE's refusal to accept ET's work as complete, entitled
8 the joint venture to withhold payment;
9     11. Whether ET's refusal to replace the governor and governor
10 cable constituted a breach of contract sufficient to preclude any
11 recovery by ET;
12     12. Whether ET's refusal to turn on the elevator after it
13 purportedly completed its work, attempting to force the joint
14 venture to pay ET, constituted either a breach of contract or
15 "unclean hands" sufficient to preclude any recovery by ET;
16     13. Whether ET's removal of the computer for the elevator in
17 an attempt to force the joint venture to pay ET (an act considered
18 criminal by the owner and the Department of Homeland Security),
19 constituted either a breach of contract or "unclean hands"
20 sufficient to preclude any recovery by ET;
21     14. Whether ET's retention of the keys to the elevator in an
22 attempt force the joint venture to pay ET, constituted either a
23 breach of contract or "unclean hands" sufficient to preclude any
24 recovery by ET;
25     15. Whether ET's failure to properly install the Rope Gripper
26 constituted a breach of contract sufficient to preclude any
27 recovery by ET;
28     16. Whether ET's failure and refusal to promptly repair the

Rope Gripper in an attempt force the joint venture to pay ET, constituted either a breach of contract or "unclean hands" sufficient to preclude any recovery by ET;

17. Whether ET's repeated refusal to accept the directions of the joint venture or the owner constituted a breach of contract sufficient to preclude any recovery by ET;

18. Whether, if ET is somehow entitled to overtime, ET's claim for overtime is artificially inflated, where the overtime premium it seeks to impose calculates out to $300.00/ hour;

19. Whether ET's artificially inflated claim for overtime constitutes a fraudulent claim; and

20. Whether ET's refusal to accept tender of the contract balance after ET's work was finally accepted as complete by the ACOE precludes ET's claim for interest and/or attorney fees.

## VI. DISPUTED EVIDENTIARY ISSUES

None.

## VII. RELIEF SOUGHT

A.  Plaintiff

ET contends it is owed $79,129.33 which includes $37,176.75 owing on the original Subcontract, $34,350.00 for overtime wages that David Flagg agreed to reimburse ET for during the August 18, 2005 Project meeting, as well as $7602.58 for interest owing on the outstanding balance and additional costs incurred by JV since the August 31, 2005 ET completion of the Project, as well an award of attorneys' fees and costs.

B.  Defendants

Defendants seek a determination that ET receive nothing by way of its complaint. ET's numerous breaches of contract, bad faith,

unclean hands and fraudulent conduct should preclude recovery of any amount.

To the extent ET is entitled to any recovery, Defendants contend that ET is owed no more than $34,877.50, which is the actual balance of its contract. ET is owed nothing for interest or attorney fees because FBI tendered the balance of the Subcontract price within 90 days after the ACOE finally accepted ET's work as complete. ET is owed nothing for overtime because (1) Dave Flagg did not agree to pay overtime; and even if he had (2) an oral modification of a contract regarding a pre-existing obligation is unenforceable as a matter of law; and (3) ET's demand for $300/hr. for overtime is fraudulent.

FBI is owed liquidated damages of $1,480 for every day the Project remained incomplete after August 31, 2005, for up to 588 days and $870,240.00, according to proof

## VIII. POINTS OF LAW

Trial briefs shall be filed with the court no later than seven (7) days prior to the date of trial, i.e., June 1, 2009. Any points of law not previously argued to the Court should be briefed in the trial briefs.

## IX. ABANDONED ISSUES

The parties are not aware of any abandoned issues in this case.

## X. WITNESSES

Plaintiff and Defendants anticipate calling the following witnesses:

1. Leonard Bates, Elevator Technology.
2. Peggy Bates, Elevator Technology.

| | |
|---|---|
| 1 | 3. Ryan Bates, Elevator Technology. |
| 2 | 4. Chris Fuerrera, Elevator Technology. |
| 3 | 5. David Flagg, Flagg Building Improvements. |
| 4 | 6. Keith Odister, KOO Construction. |
| 5 | 7. Michael Graham, Hollister-Whitney Elevator Corporation. |
| 6 | 8. Michael Corlew, Pitfield & Associates. |
| 7 | 9. Jerry Orbitz, prior Flagg Building Improvements employee. |
| 8 | 10. Troy Smith, Nutter Electric. |
| 9 | 11. Russell Thorne, Army Corps of Engineers. |
| 10 | 12. Alton Bailey, KOO Construction. |
| 11 | 13. Diana Bonnet. |
| 12 | 14. Plaintiff's Expert [to be identified]. |
| 13 | 15. Defendants' Expert [to be identified]. |

Each party may call a witness designated by the other.

A. No other witnesses will be permitted to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2) The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in "B" below.

B. Upon the post-Pretrial discovery of witnesses, the attorney shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify. The evidence will not be permitted unless:

(1) The witnesses could not reasonably have been discovered prior to Pretrial;

(2)  The court and opposing counsel were promptly notified upon discovery of the witnesses;

            (3)  If time permitted, counsel proffered the witnesses for deposition;

            (4)  If time did not permit, a reasonable summary of the witnesses' testimony was provided opposing counsel.

## XI. EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiff and Defendants intend to introduce the following exhibits:

1. FBI/KOO & Travelers Casualty and Surety Company Performance Bond, dated September 21, 2004.

2. FBI/KOO Subcontract Agreement with Elevator Technology.

3. FBI/KOO contract with United States of America, through the United States Army Corps of Engineers for Folsom Dam Improvement Project, dated October 19, 2004.

4. Folsom Dam Job Specifications and Plans.

5. Hollister-Whitney Elevator Corporation instructions, correspondence and reporting relating to "Rope Gripper."

6. Elevator Technology, Inc. invoices and Demands for Payment to FBI and/or KOO.  [Need further specification or exhibit will be stricken.]

7. Folsom Dam Project Daily Logs.  [Need further specification or exhibit will be stricken.]

8. Folsom Dam Project Inspection Reports.  [Need further specification or exhibit will be stricken.]

9. Elevator Technology timesheets, labor/equipment lists and material logs.  [Need further specification or exhibit will be stricken.]

10.  Folsom Dam maintenance logs.  [Need further specification or exhibit will be stricken.]
         11.  ET extension requests to FBI and/or KOO Construction.  [Need further specification or exhibit will be stricken.]
         12.  All permits relating to Folsom Dam elevator use, inspection and operation for Project.  [Need further specification or exhibit will be stricken.]
         13.  Project Change Orders.  [Need further specification or exhibit will be stricken.]
         14.  Various written correspondence and electronic communications between Elevator Technology, Flagg Building Improvements, Hollister-Whitney Elevator Corporation, Pitfield & Associates, Army Corps of Engineers, and/or KOO Construction.  [Need further specification or exhibit will be stricken.]
         15.  Certified Payroll.  [Need further specification or exhibit will be stricken.]
         16.  Invitation to Bid – August 2004.
         17.  Elevator Repair Bid.
         18.  Minutes of Weekly Coordination Meetings.  [Need further specification or exhibit will be stricken.]
         19.  Folsom Dam Project Sign-in sheets, daily logs and schedules.  [Need further specification or exhibit will be stricken.]
         20.  Quality Control Reports.  [Need further specification or exhibit will be stricken.]
     Each party may use an exhibit designated by the other.
     A.  No other exhibits will be permitted to be introduced unless:

1              (1)   The party proffering the exhibit demonstrates that
2    the exhibit is for the purpose of rebutting evidence which could
3    not be reasonably anticipated at the Pretrial Conference, or
4              (2)   The exhibit was discovered after the Pretrial
5    Conference and the proffering party makes the showing required in
6    paragraph "B," below.
7         B.   Upon the post-Pretrial discovery of exhibits, the
8    attorneys shall promptly inform the court and opposing counsel of
9    the existence of such exhibits so that the court may consider at
10   trial their admissibility.  The exhibits will not be received
11   unless the proffering party demonstrates:
12             (1)   The exhibits could not reasonably have been
13   discovered prior to Pretrial;
14             (2)   The court and counsel were promptly informed of
15   their existence;
16             (3)   Counsel forwarded a copy of the exhibit(s) (if
17   physically possible) to opposing counsel.  If the exhibit(s) may
18   not be copied, the proffering counsel must show that he has made
19   the exhibit(s) reasonably available for inspection by opposing
20   counsel.
21        As to each exhibit, each party is ordered to exchange copies
22   of the exhibit not later than fourteen (14) days before trial.
23   Each party is then granted five (5) days to file and serve
24   objections to any of the exhibits.  In making the objection, the
25   party is to set forth the grounds for the objection. The attorney
26   for each party is directed to appear before and present an original
27   and one (1) copy of said exhibit to Harry Vine, Deputy Courtroom
28   Clerk, at 8:30 a.m. on the date set for trial or at such earlier

14

time as may be agreed upon.  As to each exhibit which is not objected to, it shall be marked and may be received into evidence on motion and will require no further foundation.  Each exhibit which is objected to will be marked for identification only.

## XII. DISCOVERY DOCUMENTS

None at issue.

## XIII. FURTHER DISCOVERY OR MOTIONS

Pursuant to the court's Status Conference Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Pretrial Conference other than the discovery specifically allowed pursuant to the Court's Orders of April 8, 2009 (Docket #96), April 20, 2009 (Docket #98) and April 28, 2009 (Docket #101).  These orders are confirmed.  The parties are free to do anything they desire pursuant to informal agreement.  However, any such agreement will not be enforceable in this court.

## XIV. STIPULATIONS

The parties are amenable to appropriate stipulations, but at this point have not determined that any are necessary.

## XV. AMENDMENTS/DISMISSALS

This issue is not applicable to this trial.

## XVI. FURTHER TRIAL PREPARATION

A.  Counsel are directed to Local Rule 16-285 regarding the contents of trial briefs.  Such briefs should be filed seven (7) days prior to trial.

B.  Counsel are further directed to confer and to attempt to agree upon a joint set of jury instructions.  The joint set of instructions shall be lodged with the court clerk seven (7) calendar days prior to the date of the trial and shall be

identified as the "Jury Instructions Without Objection." As to instructions as to which there is dispute the parties shall submit the instruction(s) as its package of proposed jury instructions the three days before trial.

The parties are requested to submit a disc of all proposed jury instructions in word perfect 8.0.

C. It is the duty of counsel to ensure that any deposition which is to be used at trial has been filed with the Clerk of the Court. Counsel are cautioned that a failure to discharge this duty may result in the court precluding use of the deposition or imposition of such other sanctions as the court deems appropriate.

D. The parties are ordered to file with the court and exchange between themselves not later than one (1) week before the trial a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

E. The parties are ordered to file with the court and exchange between themselves not later than one (1) week before trial the portions of Answers to Interrogatories which the respective parties intend to offer or read into evidence at the trial (except portions to be used only for impeachment or rebuttal).

F. Each party may submit proposed voir dire questions the party would like the court to put to prospective jurors during jury selection. Proposed voir dire should be submitted one (1) week prior to trial.

G. In limine motions shall be filed separately at least ten (10) days prior to trial. Opposition briefs shall be filed five

(5) days prior to trial.  No reply briefs may be filed.

## XVII. SETTLEMENT NEGOTIATIONS

No further formal Settlement Conferences will be set in this case.

## XVIII. AGREED STATEMENTS

See paragraph III, *supra*.

## XIX. SEPARATE TRIAL OF ISSUES

The parties do not believe that separate bifurcation as to any of the issues are necessary, with the exception of bifurcating a determination of an award of attorney fees if any.

## XX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

The parties do not believe that any additional limitation or separate appointment of expert is necessary.

## XXI. ATTORNEYS' FEES

The matter of the award of attorneys' fees to prevailing parties pursuant to statute will be handled by motion in accordance with Local Rule 54-293.

## XXII. MISCELLANEOUS

None at this time.

## XXIII. ESTIMATE OF TRIAL TIME/TRIAL DATE

The parties will have four (4) to five (5) court days for trial.  Trial will commence on June 8, 2009, at 9:00 a.m. and conclude by June 13, 2009 absent further order of the Court.

Counsel are to call Harry Vine, Courtroom Deputy, at (916) 930-4091, one week prior to trial to ascertain the status of the trial date.

## XXIV. OBJECTIONS TO PRETRIAL ORDER

Each party is granted seven (7) days from the date of this

Pretrial Order to object to it or request that it be modified.

IT IS SO ORDERED.

DATED: April 30, 2009.

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE